IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

WILL TERRANCE PORTER                                                              PLAINTIFF

VS.                                                                         No. 4:07CV70-JAD

MISSISSIPPI DEPARTMENT OF CORRECTIONS, et al.                    DEFENDANTS

MEMORANDUM OPINION

Presently before the court is the Defendant's motion for judgment as a matter of law, or in the alternative, a new trial and for a remittitur. Upon due consideration the court finds that the motion shall be denied.

*A. Factual Background*

This matter was initiated by the Plaintiff, Will Porter, pursuant to 42 U.S.C. § 1983. The Plaintiff alleged that he was falsely imprisoned for 15 months beyond the expiration of the sentence imposed upon him in the Coahoma County Circuit Court. Following a conviction for breaking into an automobile, on October 22, 2004, the Plaintiff was sentenced to five years in the Intensive Supervision Program (hereinafter "ISP") with four years suspended. ISP is a state program similar to what is commonly known as house arrest where an offender is electronically monitored by a probation officer. An ISP offender is considered an inmate who is serving time at a home rather than in a penal institution.

On April 19, 2005, the Plaintiff who was still in ISP was arrested for disorderly conduct and resisting arrest. The charges arose out of an argument with his wife who the Plaintiff was living with at the time. Since he was an ISP inmate, the Plaintiff was given a Rule Violation Report (hereinafter "RVR") for the conduct. Shortly after his arrest, Porter was transported to a Mississippi Department of Corrections (hereinafter "MDOC") facility and processed. He was taken before the

disciplinary committee for a hearing on the RVR. Defendant Stephanie Jones presided over the hearing and determined that Porter was guilty of the conduct charged in the RVR, and thus had violated the terms of ISP. The Plaintiff immediately pursued an appeal of the disciplinary decision and his sentence through MDOC's grievance procedures known as the Administrative Remedy Program (hereinafter "ARP"). The Plaintiff completed the three step ARP process with the last step being reviewed and signed by the MDOC Commissioner. At each step he was denied relief.

Typically after an inmate is found guilty of some volative conduct, his inmate file and perhaps his physical person is then taken to a classification hearing. Following the classification determination, the Plaintiff's inmate file was sent to the records department. The records department consists of approximately fifty MDOC employees. Testimony from Defendant Christopher Epps, MDOC Commissioner, established that the records department was responsible determining an inmate's release date based upon the sentencing order and MDOC regulations. Sentencing orders originate from the court of conviction and are signed by the presiding judge. Defendant Epps explained that it was MDOC policy that only the records department was to have contact with the courts and judges regarding sentencing orders. A decision was made that Porter's entire five year sentence was to be reinstated. No one has been able to determine exactly who made this decision. Porter has consistently taken the position that only the remainder of his probation, a total of one year, could legally be imposed.

At some point during his confinement, the Plaintiff filed a motion for post-conviction relief in the Coahoma County Circuit Court. A hearing was held on January 16, 2007. The court ruled that MDOC did not have the authority to reinstate an inmates's suspended sentence. The court ordered Porter to be released immediately. The Plaintiff was released from prison in January 2007,

fifteen months after October 2005 when he should have been released.

Porter filed this action seeking damages for false imprisonment, unlawful seizure, and violation of his right to due process. During trial, Porter stated that while he was on house arrest he was working full-time in a restaurant as a dishwasher earning approximately $14,000 per year. The Plaintiff testified that he became depressed about his circumstances while incarcerated and was prescribed medication. Porter explained that by the time he was released his wife had established a relationship with another man. The Plaintiff's father corroborated his story and also offered that Porter had become suicidal as a result of his prolonged incarceration.

Before trial, MDOC was dismissed as an improper party and the claims against the Defendants in their official capacity were also dismissed. A jury was empaneled on January 14, 2009. At the close of evidence, the court directed a verdict in favor Defendant Stephanie Jones leaving only the Commissioner, Defendant Epps. The jury returned a verdict for the Plaintiff and awarded $250,000 in damages. The Defendant has now filed a motion for judgment notwithstanding the verdict arguing that he is entitled to qualified immunity and that the doctrine of respondeat superior precludes liability. In the alternative, the Defendant seeks a remittitur of the entire jury award.

### B. *Judgment Notwithstanding the Verdict or a New Trial*

Rule 50 of the Federal Rules of Civil Procedure sets forth the standard for granting judgment as a matter of law:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue. . . . In ruling on a renewed motion, the court may . . . allow the

judgment to stand, order a new trial, or direct entry of judgment as a matter of law. Fed. R. Civ. P. 50.

In applying this standard, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all reasonable factual inferences in that party's favor, and leave credibility determinations and the weighing of evidence to the jury. *McCrary v. El Paso Energy Holdings, Inc.*, 209 F. Supp. 2d 649, 651 (N.D. Miss. 2002) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000)). The court should grant a motion for judgment as a matter of law only when "the facts and inferences point so strongly and overwhelmingly in favor of [the moving] party that the court believes that reasonable [jurors] could not arrive at a contrary verdict." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969).

As for the Defendant's motion for a new trial, the Federal Rules of Civil Procedure permits a trial court to grant a new trial based on that court's appraisal of the fairness of the trial and the reliability of the jury's verdict. Fed. R. Civ. P. 59. The rule does not specify what grounds are necessary to support such a decision, but states only that the action may be taken "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a); *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). A new trial may be granted, for example, if the district court finds that the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in the course of the trial. *See, e.g., Eyre v. McDonough Power Equip., Inc.*, 755 F.2d 416, 420-21 (5th Cir. 1985); *Westbrook v. Gen. Tire and Rubber Co.*, 754 F.2d 1233, 1241 (5th Cir. 1985); *Carson v. Polley*, 689 F.2d 562, 570-71 (5th Cir. 1982); *Martinez v. Food City, Inc.*,

658 F.2d 369, 372-74 (5th Cir. 1981); *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980). A motion for a new trial based on evidentiary grounds should not be granted unless, at a minimum, the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence. *Carter v. Fenner*, 136 F.3d 1000, 1010 (5th Cir. 1998).

The Plaintiff alleged that Defendant Epps was responsible for ensuring that each inmate was released from prison in accordance with sentencing orders. The Plaintiff further alleged that Defendant Epps failed to properly train his employees with regard to interpretation of sentencing orders and failed to institute a policy that would ensure inmates would not be held longer than required by law. As a result of the failure to train and supervise employees and promulgate adequate policies[1], the argument continues, the Plaintiff was falsely imprisoned and denied due process. The Defendant's primary argument in support of its motion for judgment as a matter of law is that he is entitled to qualified immunity.[2]

1.  Qualified Immunity

Qualified immunity protects public officials from suit unless their conduct violates a clearly

---

[1] An official policy is "either a policy statement, ordinance, regulation, etc., that has been officially adopted by a policymaker, or a persistent, widespread practice of officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipality's policy." *Brumfield v. Hollins*, 551 F.3d 322, 327 n.3 (5th Cir. 2008).

[2] The Defendant does not make any distinguishing argument between its motion for a judgment as a matter of law and its motion for a new trial. In light of the following analysis regarding the Defendant's motion for judgment as a matter of law, the court finds that a new trial is similarly not warranted. The court finds that sufficient evidence was introduced at the trial of this matter to create a jury question concerning the Defendant's conduct or absence of conduct. The jury's verdict was not contrary to the evidence, as outlined *infra*, nor was it contrary to law. Accordingly, the court finds that the Defendant's motion for new trial should be denied.

established constitutional right. *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). The defendant must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001). Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id.*

A claim of qualified immunity requires the court to engaged in a two-step analysis. The court must first determine whether the defendant has violated an actual constitutional right. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). If the answer is "no," the analysis ends. *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007). If the answer is "yes," then the court must consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Id.* at 411. The standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citations omitted).

It is logically preferred that the applicability of qualified immunity should be determined at the earliest possible point in litigation. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). The issue of qualified immunity is a question of law, but in certain circumstances where there remain disputed issues of material fact relative to immunity, a properly instructed jury may decide the question. *Presley v. City of Benbrook*, 4 F.3d 405, 410 (5th Cir. 1993). If the application of qualified immunity remains undecided until trial, the defense may be submitted to the jury which must then determine the objective legal reasonableness of the official's conduct. *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000).

By virtue of the state court's ruling that the Plaintiff was being unlawfully held, it is clear that he was plainly and wrongfully denied the most basic and fundamental right to freedom and liberty.³ Thus, the court will proceed to the second step of the analysis, *i.e.* were the actions of Defendant Epps objectively reasonable in light of clearly established law.

      *a. Failure to Promulgate Policy*

The relevant inquiry for the second part of the analysis is "whether it would be clear to a to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 2002, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). At the time Porter was incarcerated, clearly established law required that in a claim alleging failure to promulgate policy as a basis for a 1983 liability, the failure must be "an intentional choice" and amount to subjective deliberate indifference." *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992). In other words, it must be "obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights." *Evans v. City of Marlin*, 986 F.2d 104, 108 (5th Cir. 1993).

Defendant Epps provided the most illuminating testimony regarding MDOC "policy" with regard to establishing release dates for inmates. Defendant Epps explained that after an inmate is classified his file is then sent to the records department. The records department is responsible for interpreting sentencing orders and setting release dates. Defendant Epps further explained that he

---

³ "Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process." *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980). *See also Jones v. Lopez*, 262 F. Supp. 2d 701, 721 (W.D. Tex. 2001) (denying summary judgment based on the defense of qualified immunity where prisoner plaintiff was held 253 days beyond the expiration of his sentence).

created a position for a staff attorney within the records department who would assist with the interpretation of sentencing orders and facilitate communication between MDOC and the courts when necessary. His testimony revealed that MDOC had great difficulty keeping an attorney, or any other staff member, in the records department because the salary offered was not competitive. Despite being asked in various ways and countless times, Defendant Epps could not identify the name or position of any person or persons within the records department responsible for establishing release dates for inmates. More to the point, it was not at all clear who was responsible for misinterpreting the Plaintiff's sentencing order which caused his unlawful fifteen month incarceration. Defendant Epps, however, made it abundantly clear when he frequently declared that he was responsible for creating and establishing MDOC policy.

During trial, Defendant Epps stated on several occasions that Porter's sentencing order was not clear, that it was "open to interpretation." Despite his policy that only the records department was to contact the courts regarding clarification of sentencing orders, there was no testimony indicating that any MDOC employee contacted the Coahoma County Circuit Court about Porter's sentence not even after Porter initiated the three-step ARP process complaining about his anticipated release date. Rather and perhaps to some extent contradicting himself, Defendant Epps stated that Porter "stayed in prison until the judge cleared up his error." Consequently, Defendant Epps acknowledged that Porter's sentencing order was at least "not clear" but it was apparently not MDOC's responsibility to clarify the order with the court and determine an accurate release date. The jury did not agree.

The jury was properly instructed as to the defense of qualified immunity and the requisite deliberate indifference state of mind required to impute liability. Whether Epps' actions were

objectively reasonable and whether Epps' failure to adopt adequate policies regarding the computation of sentences amounted to deliberate indifference was appropriately submitted to the jury. The jury decided adversely to Epps on both issues. The court does not believe that the jury's decision was contrary to the overwhelming weight of evidence or against reason. As put so succinctly by the Court of Appeals, a correctional institution and its officials' most basic "functions include not only the duty to protect a prisoner, but also the duty to effect his timely release." *Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1969). The jury's verdict is clearly supported by the evidence in this case.

### b. Failure to Train and Supervise

The next question presented is whether Defendant Epps' alleged failure to train or supervise his employees was objectively reasonable in light of clearly established law. An official who is not personally involved in the acts which deprived the plaintiff of his constitutional rights can be liable under Section 1983 if (1) The official failed to train or supervise the employees involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and, (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). Deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision which caused a violation of constitutional rights. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (citations omitted). A plaintiff may, however, overcome the single-incident liability "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Id.* at 372.

Here, as discussed *supra*, the testimony established that Defendant Epps had an admittedly known problem of employee turn-over in the records department. Defendant Epps stated that the reason for the turn-over was inadequate pay which attracted minimally educated people. In other words, as stated so plainly by Defendant Epps, "you get what you pay for." Based on this information, the jury could have inferred that Defendant Epps failed to maintain a competently trained staff in the records department. Since the records department was responsible for determining release dates, the jury could have also inferred that the inadequately trained staff was responsible for erroneously calculating the Plaintiff's date of release. Furthermore, according to evidence and testimony presented regarding the Plaintiff's attempts to call MDOC's as well as the Commissioner's attention to his correct release date, the jury could have and must have concluded that Defendant Epps' conduct or lack thereof was tantamount to deliberate indifference.

It is dubious whether the Plaintiff established that there had been more than this single injury due to lack of training and supervision. The court, however, is satisfied that the facts of this case were sufficient to overcome the single-incident rule. Given that the records department was completely responsible for determining release dates for the inmates in accordance with policy promulgated by Defendant Epps, it should have been readily apparent to him that the failure to adequately train and supervise employees in this department could undoubtedly result in a constitutional violation. Accordingly, the inferences drawn by the jury do not point so overwhelming in favor of Defendant Epps as to require disturbing the jury verdict.

2. Respondeat Superior

The doctrine of respondeat superior does not apply in Section 1983 actions. *Monell v. N.Y City Dept. Of Soc. Servs.*, 436 U.S. 658, 690 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Therefore,

"[s]upervisory officials may be held liable [under Section 1983] only if: (i) they affirmatively participate in acts that cause a constitutional depravation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996). In order to show that a policy has led an employee to violate an individual's rights, the plaintiff must show that the action was taken with "deliberate indifference" as to its known or obvious consequences. *Bd. Of county Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 406, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). Furthermore, an official may be subject to liability when the policies regarding training and supervision were obviously inadequate, and the resulting lack of training and supervision was likely to (and actually did) lead to a constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000).

As noted *supra*, Defendant Epps repeatedly and boastfully testified that he was the policy maker for MDOC. Although Defendant Epps insisted he was unaware of Porter's plight until he received notice of this lawsuit, there was contradictory evidence presented at trial. The Plaintiff's ARP documents were introduced as evidence. The third and final step form bore the signature "Christopher Epps." Defendant Epps denied that it was in fact his signature and offered that the task of reviewing third step ARP forms had been delegated to Deputy Commissioner Emmitt Sparkman. Defendant Epps stated that he believed the signature on the Plaintiff's third step ARP form was created by Sparkman.

The court gave a jury instruction regarding the preclusive effect of the doctrine of respondeat superior. The jury heard the testimony, reviewed the evidence and obviously concluded that Defendant Epps was personally involved in reviewing Porter's third step ARP form or either that

~5497815.wpd 11

Epps' policies caused Porter's constitutional injury. In short, the jury, having observed Defendant Epps' and the Plaintiff's testimony, determined which was more credible. *United States v. Ford*, __ F.3d __, 2009 WL 294886 at *3 (5th Cir. Jan. 13, 2009) (credibility of a witness is the exclusive province of the jury).

At trial, Defendant Epps proclaimed his dominion over everything and everyone in MDOC and then attempted to wash his hands of Porter's over-incarceration by relying upon "a lot of layers" of supervisors and employees. Indeed, it seems illogical to allow an official to turn a blind-eye to his most serious duties–duties which if neglected would most likely result in constitutional injuries– by delegating them to subordinates and then when an injury occurs expect to escape responsibility. If this was the case, an official would essentially be able to insulate himself from liability by assigning all of his duties to employees or by constructing a fortress of supervisors rendering him impervious to liability.

Borrowing from another Court of Appeals case, "the jailer will be held to a high level of reasonableness as to his own actions. If he negligently establishes a record keeping system in which errors of this kind are likely he will be held liable." *Bryan v. Jones*, 530 F.2d 1210, 1214-15 (5th Cir. 1976). Such is the case here. The facts and circumstances presented could reasonably support claims under either or both theories of failure to train and supervise or the promulgation of inadequate policies. In either event, the court cannot now say that the verdict is against the overwhelming weight of evidence nor as the Defendant asserts that there is no legal theory to hold him liable. Viewing the facts in a light most favorable to the nonmoving Plaintiff, the court finds that there was substantial evidence proffered to support the jury's verdict. Though the court finds that reasonable minds could differ, the great weight of evidence does not point so overwhelmingly

in favor of the Defendant.

## C. Remittitur

The jury awarded the Plaintiff $250,000 in damages. The Defendant, in the alternative to his motion for judgment as a matter of law, asks for a remittitur in the amount of $250,000. In support of his motion, the Defendant argues that the jury's verdict is excessive and not proportional to the proof adduced at trial.

There is a strong presumption in favor of affirming a jury award of damages. A damage award may be overturned only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice. *Westbrook*, 754 F.2d at 1241. The decision to grant or deny a motion for remittitur rests in the sound discretion of the trial judge. *Id.* A verdict is excessive only if it is "contrary to right reason" or "entirely disproportionate to the injury sustained." *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983). The calculation of damages does not require mathematical precision. *Salinas v. Roadway Exp., Inc.*, 735 F.2d 1574, 1578 (5th Cir. 1984). The size of an award is a question of fact and a court should be exceedingly hesitant to overturn the decision of the jury. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 934 (5th Cir. 1982).

Given the deference afforded jury awards and the scant argument proffered by the defense, the court does not find that $250,000 was excessive in exchange for approximately fifteen months of a man's freedom. On this record, a reasonable jury could and did find Porter was entitled to be compensated for his loss of freedom, lost earnings and emotional stress. *See Thompson v. Connick*, 553 F.3d 836, 865-67 (5th Cir. 2008) ($14 million for 18 years in prison). Accordingly, the court finds that the amount awarded was consistent with the proof of injury presented at trial.

*D. Conclusion*

In sum, the court finds that the Defendant's motion for judgment as a matter of law or, in the alternative, for new trial shall be denied in all respects. The Defendant's motion for remittitur shall also be denied.

A separate order in accordance with this opinion shall issue this day.

This the 30th day of March 2009.

/s/ JERRY A. DAVIS
UNITED STATES MAGISTRATE JUDGE